IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CV-24122-BLOOM

SUPACAZ (TAIWAN) LTD. and ANTHONY SINYARD,

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

      Defendants.

## DEFENDANT UXCELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TO DISSOLVE THE ASSET RESTRAINT

Defendant, Uxcell ("Defendant" or "Uxcell"), by and through undersigned counsel, hereby files this Opposition to Plaintiff's Motion for Preliminary Injunction and to Dissolve the Asset Restraint Amount and, in support thereof, states as follows:

### I.   OVERVIEW

1. On October 24, 2024, Supacaz (Taiwan) Ltd. ("Supacaz") and Anthony Sinyard ("Sinyard") (collectively, "Plaintiffs") filed a Complaint in this action (D.E. 1), alleging trademark infringement and counterfeiting (D.E. 1, ¶¶ 48-55), false designation of origin (D.E. 1, ¶¶ 56-60), and common law unfair competition (¶¶ 61-68) against 128 defendants.

2. On November 5, 2024, the Court granted Plaintiffs' *ex parte* motion for a Temporary Restraining Order ("TRO") (D.E. 14). On November 8, 2024, the Court granted Plaintiffs' Motion to Extend Temporary Restraining Order and scheduled a Preliminary Injunction Hearing for November 26, 2024 (D.E. 18).

3. Plaintiffs' *ex parte* motion for a TRO fails to establish irreparable injury to the

Plaintiffs and should be denied on this ground alone. Uxcell has already removed the Accused Product from its store and will not continue to sell it. The limited number of sales of the accused product by Uxcell (i.e., approximately 16 unit sales with $230.52 in sales revenue) has not diminished the goodwill of Plaintiffs. Moreover, Uxcell is misjoined because its alleged trademark infringement does not arise out of the same transaction or occurrence as other defendants' unrelated alleged infringement of the mark.

4. As a result of the TRO and the asset restraint, Uxcell cannot withdraw any funds from Uxcell's Amazon accounts, regardless of whether those funds are derived from sales of the accused bike handlebar tape or unrelated sales or from future income. This overbroad restriction substantially restricts Uxcell's ability to continue its business.

5. Specifically, Uxcell's Amazon account has a restrained amount of $2,451,531.92 as of November 21, 2024. *See* Declaration of Ka Lok Ng ("Dec. of Ng"), ¶ 6; *see also* Ex. B (Uxcell's Amazon Payments Dashboard). However, Uxcell has sold only 16 units of the accused product, which is a black and white version of bike handlebar tape ("Accused Product"). Uxcell's total sales for the Accused Product are $230.52. *See* Dec. of Ng, ¶ 5. The sales amount of $230.52 is negligible in relation to the nearly $2.5 million currently restrained in Uxcell's Amazon account. In fact, the restrained amount is more than 10,000 *times* Uxcell's actual sales revenue for the Accused Product, and the restrained amount continues to increase substantially each day.

6. Notwithstanding Uxcell's applicable defenses, including affirmative defenses, and counterclaims—which Uxcell hereby reserves the right to assert when it files an Answer to the Complaint—Uxcell requests this Court to grant its Motion to Dissolve Asset Restraint, as the amount restrained is far in excess of the amount Uxcell has derived from sales of the Accused Product. The asset restraint restricts Uxcell's ability to continue its business and the sale of

products unrelated to this action. *See* Dec. of Ng, ¶ 6.

7.  Uxcell respectfully requests that the Court modify the Temporary Restraining Order to dissolve—or, in the alternative, reduce—the asset freeze in accordance with the equity principles and established caselaw precedent, as detailed below.

## II.  LEGAL STANDARDS

### A.  District Courts are Empowered to Modify TROs

8.  The Federal Rules of Civil Procedure state that a party may be afforded relief from a temporary restraining order where prospective application of the order is "no longer equitable." *See* Fed. R. Civ. P. 60(b)(5), 65(b)(4); *Sec. & Exch. Comm'n v. OTC Cap. Partners, LLC*, 2021 WL 9426827 at *2 (S.D. Fla. Oct. 20, 2021). "A district court has continuing jurisdiction over a [TRO] and may relieve a party from obligations determined by the decree if it is no longer equitable." *Breslow v. Phillips*, No. 23-CV-20727, 2023 WL 4363941, at *3 (S.D. Fla. June 9, 2023) (alteration original).

9.  A district court has "the inherent power to grant appropriate equitable relief." *Giant Screen Sports LLC v. Sky High Ent.*, No. 07-22682-CIV, 2009 WL 10712144, at *2 (S.D. Fla. Jan. 16, 2009) (internal citation omitted). And, "[b]y the same token, district courts also have the inherent power to dissolve" the equitable relief granted. *Id.*

10. The party challenging a temporary injunction bears the burden of showing that a change of circumstances has occurred such that the relief previously granted is no longer equitable. One such change in circumstances is evidence that the equitable relief is not properly limited. *See Awareness Ave. Jewelry LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A,"*, No. 8:23-CV-2-TPB-AAS, 2023 WL 3568387, at *1 (M.D. Fla. May 19, 2023) ("Defendants have shown that the amounts frozen are not so limited, and therefore good grounds exist to modify the injunction to reduce or eliminate the asset restraint."); *see also infra* Section

II.B. Once the moving party has met that burden, a court's refusal to modify the equitable relief constitutes an abuse of discretion. *See Sec. & Exch. Comm'n v. Betta*, 2018 WL 11448612 at *2 (S.D. Fla. Aug. 7, 2018).

11. Therefore, this Court is empowered to modify the previously issued TRO, including the asset freeze provision, due to a change in circumstances.

### B. <u>Asset Freezes Should be Limited to Potentially Recoverable Profits</u>

12. Although a court can freeze a defendant's assets so that the funds remain available for the court to award to the plaintiff if permanent equitable relief is ultimately granted, "the amount frozen must be limited to a reasonable approximation of the amount potentially recoverable, *i.e.*, the amount derived from unlawful activity." *Awareness Ave. Jewelry LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A,"*, No. 8:23-CV-2-TPB-AAS, 2023 WL 3568387, at *1 (M.D. Fla. May 19, 2023); *see also Charter Sch. Cap., Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, 2015 WL 11201180 at *3 n. 3 (S.D. Fla. June 2, 2015) ("[T]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.") (internal citations omitted).

13. The Eleventh Circuit has repeatedly held that only a defendant's "ill-gotten gains"—*i.e.*, the profits earned from the allegedly unlawful activity—are the proper subject of an asset restraint. *See S.E.C. v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982, 987 (11th Cir. 1995) (holding that "the district court had the authority to freeze those **assets which could have been used to satisfy an equitable award of profits**") (emphasis added).

14. Courts in this district have likewise recognized that they may order a prejudgment asset freeze "***only with respect to assets in which an equitable interest is claimed*** and established."

*Simport Plastiques, Ltd. v. Imprint Genetics Corp.*, 2008 WL 11470805 at *2 (S.D. Fla. July 30, 2008), report and recommendation adopted, 2008 WL 11470806 (S.D. Fla. July 30, 2008) (emphasis added); *see also U.S. Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc.*, 2006 WL 8432005 at *7 (S.D. Fla. Jan. 9, 2006) ("[A]ny funds not reasonably related to the ultimate relief requested by Plaintiff should be released.").

15. Prior to determining that certain assets are eligible to be frozen, the court must find "a nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit." *Fed. Trade Comm'n v. Netran Dev. Corp.,* 2005 WL 8155969 at *12 (S.D. Fla. Dec. 22, 2005), *report and recommendation adopted sub nom. Fed. Trade Comm'n v. Netran Dev. Corp.*, 2006 WL 8433430 (S.D. Fla. June 12, 2006); *see also Chanel, Inc. v. 83bab.com,* 2014 WL 11881008 (S.D. Fla. June 19, 2014), *report and recommendation adopted,* 2014 WL 11881007 (S.D. Fla. July 11, 2014) (declining to freeze assets in certain of defendant's accounts because plaintiff had failed to show that the accounts held "illegal profits from the sale of the [counterfeit] goods").

16. Importantly, any *legal* relief a plaintiff plans to seek cannot impact the amount frozen for *equitable* relief. Only money that may be available as a remedy for equitable claims—*i.e.,* lost profits—should be frozen. *See Awareness Ave. Jewelry*, 2023 WL 3568387, at *1 ("Plaintiffs offer no contrary evidence as to the amount of Defendants' profits but argue that Plaintiffs may be able to recover hundreds of thousands of dollars in lost sales and/or statutory damages under the Copyright Act. This response is unavailing because those remedies would be legal, not equitable."). A court cannot order a prejudgment asset freeze to sequester funds to pay a judgment for money damages, or statutory damages, such as damages under the Lanham Act. *See id.* (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998); *Klipsch Group,*

5

*Inc. v. Big Box Store Ltd.*, No. 12 CIV. 6283 AJN, 2012 WL 5265727, at **5, 6-7 (S.D.N.Y. Oct. 24, 2012) (rejecting asset freeze amount tied to potential statutory damages under the Lanham Act); *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1529-30 (11th Cir. 1994) ("**We repeat**: preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority.") (emphasis added).

### C. Preliminary Injunctions are Extraordinary Forms of Relief

17. To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

18. "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quotation omitted). A failure to establish any one of the four criteria is fatal. *Id.* "[T]he most common failure is not showing a substantial likelihood of success on the merits." *Id.*

19. Broad, conclusory allegations of connectivity do not establish a sufficient connection between defendants to permit joinder. *Omega, SA v. Individuals, Bus. Entities , & Unincorporated Associations Identified on Schedule "A",* 650 F. Supp. 3d 1349, 1353 (S.D. Fla. 2023); *see also Gold Wing Trading Inc. v. Individuals, Partnerships & Unincoporated Associations identified on Schedule "A"*, No. 23-CV-60849, 2023 WL 9029582, at *2 (S.D. Fla. Nov. 3, 2023) (J. Middlebrooks) (agreeing with Judge Moore that joinder is improper where "one plaintiff is alleging separate incidents of misconduct by a host of defendants but only filing a single

6

complaint").

### III.   ARGUMENT

20.   Here, the Court has the power to modify the temporary restraining order. *See* Fed. R. Civ. P. 60(b)(5), 65(b)(4). Uxcell requests that the Court exercise this power, as new circumstances demonstrate that the asset freeze in the TRO is "no longer equitable." *See, e.g., Breslow*, 2023 WL 4363941, at *3. This provides good cause for the Court to dissolve the asset freeze. *Awareness Ave. Jewelry*, 2023 WL 3568387, at *1.

21.   The TRO in this case froze all funds in Uxcell's Amazon account. Since the issuance of the TRO, Uxcell has provided evidence demonstrating that Plaintiff has no legitimate equitable interest in the vast majority of the restrained amount. *See* Decl. of Ng at ¶¶ 5-6; *see also Simport Plastiques, Ltd.*, 2008 WL 11470805 at *2 ("A District Court can order an asset freeze as part of preliminary injunctive relief only with respect to assets in which an equitable interest is claimed and established."). Defendant has now provided this Court with documentary evidence in the form of sales records of the Accused Products, which are supported both by the attached declaration of Ka Lok Ng, manager for Uxcell, as well as the sales data provided by Amazon, attached as Ex. A. This evidence shows that Uxcell has $2,451,416.90 frozen in its Amazon account, compared to a sales volume of $230.52 from 16 sales of the Accused Product. *See* Decl. of Ng at ¶¶ 5-6.

22.   There is no basis for continuing to restrain $2,451,416.90, which vastly exceeds the alleged "ill-gotten profit" of $230.52. *See, e.g., Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (agreeing to reduce asset restrain from $2,000,000 down to $1,000 upon defendants providing documentary evidence showing profits from sales of accused products).

23.   Any argument by Plaintiff that additional amounts should be frozen in case of an

award of statutory damages under the Lanham Act, or any other monetary relief, must fail. *See Awareness Ave. Jewelry*, 2023 WL 3568387, at *1 (eliminating the overbroad asset restraint in light of the minimally alleged infringing activity). Plaintiff has not—because it cannot—establish that the overwhelming balance of funds in Uxcell's Amazon account has any nexus to Uxcell's sales of the alleged Accused Product. There is no basis to restrain Uxcell's profits from sales of products not accused of infringement. Such a restraint is not only perilous to Uxcell's business operations, but not merited by Plaintiff's requested relief and not authorized by equitable principles.

24. Accordingly, the amount of any asset restraint on Uxcell's accounts should be reduced to, at the very most, the sales from the Uxcell's accounts related to sales of the Accused Products. Because documentary evidence establishes that sales of the Accused Products total $230.52, which is a negligible amount compared to the $2,451,416.90 in Uxcell's Amazon account, Uxcell respectfully requests that the Court dissolve the asset restraint entirely.

## IV. CONCLUSION

25. For the reasons set forth above, Uxcell respectfully requests that the Court deny Plaintiff's Motion for a Preliminary Injunction. Alternatively, if the Court enters an injunction against Uxcell, Uxcell respectfully request the Court to enter an Order dissolving or reducing the asset restraint vis-à-vis Uxcell to no more than $1,000 (*i.e.*, approximately four times the amount of the Uxcell's sales of the Accused Product), and grant such other relief as the Court deems just and appropriate.

## V. L.R. 7.1(A)(3) CERTIFICATION

26. The undersigned counsel has conferred with all parties who may be affected by the relief sought hereunder (i.e., Plaintiff), and Plaintiff has indicated that it opposes the requested asset restraint dissolution or reduction.

Dated:  November 24, 2024          Respectfully submitted,

By: s/ Louis Constantinou
Louis Constantinou, Esq. *(admitted pro hac vice)*
Email:  LConstantinou@beneschlaw.com
**BENESCH FRIEDLANDER COPLAN**
**& ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
Telephone:  (312) 212-4963

By: s/ Brian J. Stack
Brian J. Stack, Esq.
Fla. Bar No. 0476234
Email:  bstack@stackfernandez.com
       mwolf@stackfernandez.com
**STACK FERNANDEZ & HARRIS, P.A.**
255 Alhambra Circle, Suite 330
Coral Gables, Florida 33134
Telephone:  (305) 371-0001

*Attorneys for Defendant, UXCELL (Doe Number 55)*